**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PHILLIP NILES MARTIN, )<br>)<br>Defendant. ) | Case No. 24-CR-67-JD |

**SENTENCING MEMORANDUM AND
REQUEST FOR VARIANCE**

Phillip Niles Martin, through counsel, Lance B. Phillips, submits this Sentencing Memorandum Request for Variance to address the statutory factors set forth in Title 18 U.S.C. § 3553 (a), as they relate to a fair and just sentence for Mr. Martin.

**I. FEDERAL SENTENCING GUIDELINES**

Post *United States v. Booker*, 125 S. Ct. 738, 757 (2005) the Federal Sentencing Guidelines are now advisory and one of several factors to be considered under Title 18 U.S.C. §3553(a). 18 U.S.C. §3553 (a) directs the Court to impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in 18 U.S.C. §3553 (a)(2) (emphasis added).

Under 18 U.S.C §3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence"

A correctly calculated Guideline sentencing range is the starting point for any sentencing decision under *Gall v. United States*, 128 S.Ct. 586 (2007), it may not treat that

range as mandatory or presumptive, *Id.* At 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under §3553(a). *Kimbrough v United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the §3553(a) factors," "make an individualized assessment based on the factors presented," *Id.* At 49-50 and explain how the facts relate to the purposes of sentencing. *Id.* At 53-60; *Pepper v United States*, 131 S.Ct. 1229,1242-43 (2011). The Court's "overreaching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id.* At 101; *Peppers*, 131 S.Ct. At 1242-43.

## II. REQUESTED SENTENCE

Mr. Martin asks this court to impose a sentence of probation on Count 1 and 2 to run concurrently. As discussed below, Mr. Martin believes extraordinary circumstances exist, primarily his age and medical conditions, such that the Court can find no fine, restitution or community service should be imposed. However, if the Court determines there are no extraordinary circumstances Mr. Martin would request, he be ordered to complete community service as he is able. The $100 special assessment on each count is mandatory. Mr. Martin would also suggest probation with a period of home confinement is an appropriate alternative to incarceration in this matter. The requested sentences would be a variance from the current advisory guideline range of 97 to 121 months (PSR at ¶76)1. These requested sentences are "sufficient, **but not greater than necessary**" (emphasis

---

1 Mr. Martin has filed objections to the PSR. If granted, the Total Offense Level would be 22. With a criminal history category I the advisory guideline range would be 41 to 51 months.

added) to serve the sentencing purposes set out in §3553(a), as will be more fully discussed below.

### III. APPLICATION OF §3553(a) FACTORS TO THE FACTS OF THE INSTANT CASE

The following factors must be considered in determining the appropriate sentence:

1.   *The Nature and Circumstances of the Offense and the History and Characteristics of the Offender;*

Title 28 U.S.C. §994(d) directs the Commission to consider whether certain specific offender characteristics "have any relevance to the nature, extent, place of service, or other incidents of an appropriate sentence" and to take them into account only to the extent they are determined to be relevant by the Commission. The characteristics to be considered are age, education, vocational skills, mental and emotional condition to the extent that such condition mitigates the defendant's culpability or to the extent that such condition is otherwise plainly relevant, physical condition, including drug dependency, previous employment record, family ties and responsibilities, community ties, role in the offense, criminal history, degree of dependence upon criminal activity for a livelihood.

Mr. Martin is a sixty-eight (68) year old lifelong resident of Oklahoma. He has a high school diploma and was enrolled at Oklahoma State University after graduation in 1973 but is six (6) credits shy of a degree (PSR ¶ 68). He and his wife of forty-eight (48) years, Brenda Martin, have resided in their marital home in Oklahoma City since 1999. He has one adult son, who lives in Cushing, whom he maintains regular contact with.

As expected from a person of his age, Mr. Martin reports several physical ailments, including high blood pressure and cholesterol, elevated uric acid levels as well as type II

diabetes. He is currently on a very strict diet and exercise regime to help with his diabetes and takes several daily medications to combat his other ailments. He reports no mental or emotional issues.

Mr. Martin has no current substance abuse issues, having given up alcohol over a decade ago. He self-reported smoking marijuana over three (3) decades prior and occasionally using amphetamines ("speed") in college back in the 70's.

As stated previously, Mr. Martin is a lifelong resident of Oklahoma, having been born in Tulsa. Both his parents and one (1) sibling are deceased. His other brother lives in Broken Arrow and Mr. Martin maintains regular contact with him. Although his family is now small, a single sibling and child, he has strong ties to this community, having lived here his entire life.

Mr. Martin began working at age sixteen (16) and continued to work until he retired in 2021 at age sixty-five (65). As noted in the PSR at ¶ 68, Mr. Martin did not complete his college education because he received a job offer his senior year which was a great opportunity he could not pass up. He and his brother are currently working on a couple of different land deals/opportunities on the family-owned property in Arkansas. This keeps him busy and occupied as he travels back and forth often. With the large sum of cash and firearms being forfeited because of this prosecution finances have become much tighter for Mr. Martin and his wife, which caused her to seek part-time employment after her retirement in 2023.

Mr. Martin's role in this offense has been overstated by the probation officer. He pleaded guilty to a Firearms Trafficking Conspiracy, forfeiting 194 firearms and a

substantial amount of money. USPO Sweet refers to Application Note 5 to USSG §2K2.1 in her response to Mr. Martin's objection to the 10-point enhancement applied under the same section. This note gives guidance on which firearms are to be "counted", those which "were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed.". Mr. Martin admitted in an interview with agents (PSR at ¶ 26) he had collected firearms for approximately 30-40 years and most of the firearms sold at the swap meet belonged to his associate, Timothy Fox. To apply the 10-point enhancement this court needs to assume more than 200 firearms fit within the application note. This is simply not possible given the facts of this case. The PSR at ¶28 states "Approximately 202 firearms were involved, including the guns sold in the undercover purchases, the firearms seized at **Martin**'s residence, and the firearms Fox released to agents." However, the forfeiture allegation in the Information as well as the Plea Agreement lists 194 firearms and the conversion switch, which is below the 200 thresholds.  There is no evidence any of the firearms were unlawfully sought to be obtained. There is no evidence any of the firearms possessed by Mr. Martin, other than the single Glock conversion switch he pleaded guilty to, were unlawfully possessed. He was not a prohibited person. USPO Sweet suggests the fact "Some guns were also labeled with prices and descriptions, demonstrating the defendant collected the firearms for the purpose of distributing them…." shows intent. Again, Mr. Martin had been collecting firearms for decades. It is reasonable to infer he routinely labeled the boxes with descriptions and purchase price as a record keeping practice and not solely for sales purposes. Regardless, the reports do not indicate every firearm was labeled and had a price. If there are somehow 202 firearms involved, if any 3 of them should not

be counted, then the 10-point enhancement cannot apply. Additionally, the PSR at ¶ 30, discuss messages found on Armslist.com. USPO Sweet correctly points out these messages are about Mr. Martin discussing purchasing firearms, something he is not prohibited from doing. She is also correct "…the deals did not go through;…". She then goes on to say "…it **seems** several transactions did take place." (emphasis added) Mr. Martin should not be held accountable for what seems to have happened. With no clear evidence as to how many should be counted, this Court should give Mr. Martin the benefit of the doubt and not apply the maximum enhancement under USSG §2K2.1(b)(1)(E). Instead, it is submitted this Court should apply USSG §2k2.1 (b)(1)(A). Four firearms were purchased from Mr. Martin during this investigation, a 5th was discussed but never purchased.

Mr. Martin has a single criminal history point, placing him in criminal history category I. His lone offense was a misdemeanor DWI, reduced from a DUI, in 2007. He paid a fine and was not placed on any period of probation. This coincides roughly with the timeframe Mr. Martin began abstaining completely from the use of alcohol. His only other contact with law enforcement, other than routine traffic stops, appears to be an un-prosecuted DUI thirty-three years ago in 1991. It is apparent because of his relative lack of criminal history Mr. Martin is not dependent on criminal activity for his livelihood.

  2.  *The Need for the Sentence Imposed to Promote Certain Statutory Objectives;*

### To reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense

Mr. Martin timely entered a plea to an Information in this matter, accepting

responsibility for his crimes against the United States and not forcing the government to seek an Indictment before the Grand Jury. He is sixty-eight (68) years old and his lack of criminal history shows he has maintained a respect for the law throughout his life. His conviction in this matter, ensuring he will never be able to legally purchase, own or have a firearm in the future provides just punishment for the offenses he plead to.

### To afford adequate deterrence to criminal conduct and protect the public from further crimes of the Defendant

In deciding a proper sentence, the Court should consider the risk of recidivism as well the Defendant's prior criminal history, if any. Obviously more weight should be given to an incarceration sentence for a defendant who has had serious violations of the law. §3553 (a)(2)(c) requires the Court to consider "the need for the sentence imposed... to protect the public from further crimes of the defendant."

It is submitted that there is an extremely low risk of recidivism in this case. As discussed, Mr. Martin's sole criminal history point arises from a misdemeanor seventeen (17) years ago. Beyond this matter he has not had any serious violations of the law.

As noted in the previous section, this conviction ensures he will never handle firearms again legally. This is a major deterrence to future criminal conduct. There is also very little need to protect the public from future crimes from Mr. Martin given everything that has been discussed in the Memorandum. A sentence of probation instead of incarceration achieves the objective set forth in §3553 (a)(2)(c).

### To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

At this stage in Mr. Martin's life there is no need for any educational or vocational

training. It is submitted that his current and future medical needs would be much better served while on probation than being incarcerated. He does not need any substance abuse or mental health treatment as neither have been identified.

    3.    *Sentences Available;*

Post *Booker*, the Courts are no longer mandated to sentence within a particular sentencing guideline range. *Booker,* 125 S.Ct. at 756. The range of punishment in this case is not more than fifteen (15) years on Count 1 and not more than ten (10) years on Count 2. Each Count carries a maximum fine of $250,000 and a special assessment of $100. Mr. Martin is eligible for probation of not less than one (1) nor more than five (5) years.

    4.    *Any pertinent policy statement;*

There are no pertinent policy statements relevant to this case.

    5.    *The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.*

Mr. Martin is charged alone in the case. It is submitted a probation sentence, as requested, would not create unwarranted sentence disparities among other similarly situated defendants considering all the factors under §3553(a).

## IV. CONCLUSION

In *Gall v. United States*, 128 S.Ct. 586,591, (2007), the Court instructed the district court to "consider every convicted person as an individual and every case as unique study in the human failing that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall* at 598.

Mr. Martin has taken full responsibility for his actions. A variance is appropriate,

and the requested sentence is sufficient, **but not greater than necessary**, to comply with the factors set forth in 18 U.S.C. §3553(a).

    Respectfully Submitted,

*S/ Lance B. Phillips*
LANCE B. PHILLIPS, OBA# 17120
7 S. Mickey Mantle Dr., suite 377
Oklahoma City, OK 73104
(450) 235-5944 Telephone
lancebp2000@yahoo.com
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF MAILING

I, the undersigned, do hereby certify that a true and correct copy of the above and foregoing instrument was delivered via ECF on the 30th day of August 2024 to: Danielle Connolly, Assistant United States Attorney.

*S/ Lance B. Phillips*
LANCE B. PHILLIPS